IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NORTHPORT HEALTH SERVICES OF
ARKANSAS, LLC, d/b/a Paris
Health and Rehabilitation;
NORTHPORT HEALTH SERVICES, INC.;
and NHS MANAGEMENT, LLC                         PLAINTIFFS

v.                      Case No. 2:10-CV-02013

SANDRA O'BRIEN, as Special
Administrator of the Estate of
Robert Warren, Deceased                          DEFENDANT

## OPINION AND ORDER

Plaintiffs Northport Health Services of Arkansas, LLC d/b/a Paris Health and Rehabilitation Center; Northport Health Services, Inc.; and NHS Management, LLC, (collectively "Northport") bring their Complaint against Defendant Sandra O'Brien as Special Administrator of the Estate of Robert Warren, deceased ("O'Brien"), to compel arbitration of claims asserted by O'Brien against Northport in state court and to enjoin state court proceedings on O'Brien's claims. O'Brien's state court complaint asserts claims of medical malpractice, ordinary negligence, violations of the Arkansas Long Term Care Resident's Rights Statute, and Wrongful Death. (Doc. 3-1). Northport alleges that all claims must be submitted to arbitration pursuant to an admission agreement, which explicitly included an arbitration agreement, signed by O'Brien as Robert Warren's "responsible party" and as his power of attorney. Currently before the Court are Northport's Motion for Summary Judgment seeking to compel arbitration and to enjoin state court

-1-

proceedings and supporting documents (Docs. 21-23), O'Brien's Response (Doc. 24) and Northport's Reply (Doc. 25).

## I. Jurisdiction

This Court, in denying O'Brien's Motion to Dismiss (Doc. 4) found that the Court may properly exercise jurisdiction over this matter, as complete diversity has been established between the parties. The Court further finds that the amount in controversy requirement has been met, as the object of this litigation is the value potentially at stake in the arbitration. *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 526 F.3d 1170, 1174 (8th Cir. 2008). "Looking through" to the underlying complaint, the damages sought in a state court action may inform the Court as to the possible award resulting from the desired arbitration. *Id*. at 1175. In her state court complaint, O'Brien specifically alleges damages "in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases." (Doc. 3-1). The Court finds, therefore, that it has jurisdiction over the instant matter pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1332(a)(1).

## II. Background

Robert Warren was a resident at Northport Health Services of Arkansas, LLC d/b/a Paris Health and Rehabilitation Center ("Paris") from November 8, 2004 until March 8, 2009. Prior to Mr. Warren's admission to Paris, Sandra O'Brien signed an Admission Agreement and Consent to Arbitration and Waiver of Jury Trial (collectively "the Agreement") as Mr. Warren's "Responsible Party." Mr. Warren had appointed O'Brien as his Attorney-in-Fact a year

-2-

prior to his admission to Paris, vesting in her a General Power of Attorney "to do all acts whatsoever concerning my property or personal affairs as is necessary or advisable . . ." (Doc. 3-3). On April 8, 2009, O'Brien was appointed Special Administrator of Mr. Warren's estate, and now brings her state claims against Northport in that capacity.

The Agreement was signed both by O'Brien and a Northport representative, Jaclyn Hughes. In a signed affidavit, Hughes states that the Agreement was discussed with O'Brien and Mr. Warren at some length before O'Brien signed. (Doc. 3-2). O'Brien states in a signed affidavit that she questioned Hughes as to what would happen if she refused to sign, saying that she knew the Arbitration Clause was not legal in Arkansas. O'Brien states that Hughes responded, "It has to be signed." (Doc. 13-1). O'Brien also disputes that Mr. Warren was with her at the time she signed the Agreement.

The Agreement contains various broadly-worded provisions mandating that disputes including, but not limited to, "claims for breach of contract or promise (express or implied); tort claims; and claims for violation of any federal, state, local, or other governmental law, statute, regulation, common law, or ordinance" shall be resolved by binding arbitration, notwithstanding some narrow exceptions. (Doc. 3-2 at p. 6). Under the Agreement, the parties mutually agree "to settle all Disputes by binding arbitration rather than by a judge, jury, or administrative agency." *Id*. In several instances, the Agreement highlights the fact that parties are specifically waiving their rights to a jury trial, including the following:

-3-

**THE PARTIES ACKNOWLEDGE THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THEY ARE GIVING UP THEIR RIGHT TO HAVE ANY SUCH DISPUTE IN A COURT OF LAW BEFORE A JUDGE OR JURY, AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION.**

*Id.* (formatting in original). The Agreement goes on to describe the arbitration procedure in detail. On the final page before the signature lines, the Agreement sets forth the following:

> **By your execution of his Agreement and/or acceptance of service at the Facility, you and Responsible Party acknowledge, understand and agree that this Agreement includes a dispute resolution program for all claims and disputes between you and the Facility (except for monetary claims involving less than $25,000) covered by the Program (as previously defined herein); that all such claims and disputes will be resolved by binding ARBITRATION; that ARBITRATION is a complete substitute for traditional litigation; and that you and your Responsible Party waive your right to file a lawsuit in regard to a Dispute and to have any Dispute heard in a court by a judge or jury. You and your Responsible Party further acknowledge that you have had an opportunity to question a representative of the Facility concerning the terms of this Admission Agreement and the contents of the Handbook and that any questions you had have been answered to your satisfaction.**

*Id.* at p. 9. O'Brien also signed a separate "Consent to Arbitration and Waiver of Jury Trial." *Id.* at page 13.

## III. Discussion

Northport filed a Motion to Expedite Consideration of Complaint (Doc. 10), which the Court granted in an Order (Doc. 15) directing the parties to file briefs addressing the specific and limited issue of whether the agreement to arbitrate was void for

duress. After both parties filed briefs (Docs. 18-19), the Court issued an Order (Doc. 20) finding no basis upon which a jury could find that the arbitration agreement was signed under duress. The Court then identified the remaining issues raised by O'Brien's Answer as estoppel, waiver, and violation of federal law. As the remaining issues were purely legal, the Court ordered Northport to file a Motion for Summary Judgment. Northport timely filed a Motion (Doc. 21) addressing the three legal bases the Court had identified, and arguing as to why those bases were insufficient to warrant a ruling in O'Brien's favor. O'Brien timely filed a Response (Doc. 24), and Northport filed a Reply (Doc. 25). These filings are currently before the Court for consideration.

In her three-page Response, O'Brien succinctly advances only two arguments. First, O'Brien argues that the arbitration agreement violates federal law. Second, O'Brien argues that, in the event Northport contends there was no valuable consideration for the arbitration agreement, the arbitration agreement fails for lack of consideration. These arguments will be addressed in turn.

In failing to advance any other arguments, even after being prompted by the Court and Northport's Motion, the Court must find that Defendant voluntarily abandoned any arguments that might otherwise have been available to her. Defendant has declined to advance any arguments concerning estoppel or waiver, as identified by the Court and as discussed and analyzed in Northport's Motion. Nor has O'Brien argued issues preemptively raised by Northport, including O'Brien's ability to bind her present claims to arbitration. "It is not the obligation of this court to research

and construct the legal arguments open to parties, especially when they are represented by counsel." *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) (citations omitted); *see also Good v. Khosrowshahi*, 296 Fed. Appx. 676, 680 (10th Cir. 2008) ("It is not the province of this court to advocate on behalf of litigants (counseled or pro se) by attempting to construct for them potential arguments of either a legal or factual nature."). "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Pelfresne v. Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (citations omitted). Nor is it for the Court to review O'Brien's litigation strategy. The Court turns, instead, to those claims that O'Brien has advanced in opposing Northport's Motion for Summary Judgment.

Here, O'Brien has staked her all on attempting to persuade the Court that the Arbitration Agreement is void as violative of federal law. O'Brien's second argument, that in the event Northport contends there was no valuable consideration for the arbitration agreement the arbitration agreement fails for lack of consideration, is without merit. Northport makes no contention that there was no valuable consideration for the arbitration agreement. Furthermore, in consideration of entering into the Agreement, both parties mutually agreed to waive their respective rights to a jury trial in  order to resolve disputes arising under the Agreement.

The only remaining issue for the Court to consider, therefore, is whether the arbitration agreement violates federal law. The

parties do not dispute that the Agreement is "a contract evidencing a transaction involving commerce," and the Agreement is, therefore, subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. "By its terms, the FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Pro Tech Indus. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004)(quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985))(emphasis in original). This Court is therefore limited under the FAA to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute between the parties. *Id.* Only the first determination is at issue in this case, as the parties do not argue that their disputes do not fall within the broad ambit of the Agreement. The Court need only determine, therefore, whether the Agreement is valid. In conducting its analysis, the Court is mindful that the FAA declares a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). In addition, "[a]rbitration is strongly favored in Arkansas as a matter of public policy and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion." *Pest Mgmt., Inc. v. Langer*, 250 S.W.3d 550, 556 (Ark. 2007) (citation omitted).

In determining whether summary judgment is appropriate, the

burden is placed on the moving party to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.,* 165 F.3d 602 (8th Cir. 1999). Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party  must set forth specific facts showing that there is a genuine issue for trial. *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998)(citing *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir. 1981)). In order for there to be a genuine dispute of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Furthermore, "[w]here the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996)(quoting *Crain v. Bd. of Police Comm'rs,* 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

O'Brien, as the party seeking to avoid arbitration, has the burden of proving any affirmative defenses raised in objecting to the viability or applicability of the agreement to arbitrate. *See e.g.*, *Madol v. Dan Nelson Auto. Group,* 372 F.3d 997, 999 (8th Cir. 2004)("A party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration")(internal

-8-

quotation omitted); *Pro Tech Indus.*, 377 F.3d at 873 ("the party seeking to avoid the arbitration provision has the burden of proving an arbitration provision is unconscionable"). O'Brien argues that the Agreement is void on grounds of illegality. O'Brien claims the nursing home required her to sign the Agreement, which included the provisions mandating arbitration, as a condition of admission in violation of the Medicaid Act, 42 U.S.C. § 1396r, and the Code of Federal Regulations on Medicare and Medicaid services at 42 C.F.R. § 483.12(d)(3), (collectively "Medicaid regulations") which prohibit a nursing facility from requiring any additional consideration as a precondition of admission. Specifically,

> [w]ith respect to admissions practices, a nursing facility must – in the case of an individual who is entitled to medical assistance for nursing facility services, not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan under this title, any gift, money, donation, or other consideration as a precondition of admitting . . . the individual to the facility . . .

42 U.S.C. § 1396r(c)(5)(A)(iii); *see also 42* C.F.R. § 483.12(d)(3) (using substantially similar language). O'Brien provides the Court with no legal authority to bolster her argument that an arbitration agreement should be considered additional consideration, and little in the way of analysis in support of her position. O'Brien cites only to a newspaper article, which posits that plaintiffs may receive lower payouts in nursing home cases which are resolved through arbitration. While the article is rife with opinions on the evils of arbitration agreements in nursing home cases, it does nothing to develop O'Brien's argument that such agreements are

illegal.

Northport anticipated, in its briefings, that O'Brien would argue that a Memorandum released by The Centers for Medicare and Medicaid Services("CMS") in 2003, and a Declaratory Order issued by the Arkansas Department of Human Services ("Arkansas DHS") in 2002, support the position  that nursing facilities may not require the signing of an arbitration agreement as a condition of admission. While these documents are not binding on the Court, and O'Brien failed to reference them in her briefings, they are instructive. Both documents would, in fact, seem to support the argument that arbitration agreements should not be required as a condition of admission to a nursing facility. The CMS Memo, however, stops short of explicitly stating that an arbitration agreement may not be required as a condition of admission, instead focusing on prohibiting the discharge of *existing* residents who fail to sign or comply with a binding arbitration agreement. (Doc. 22-1). As for the declaratory order, Northport later entered into a settlement agreement with Arkansas DHS, in which Arkansas DHS back-pedaled from the harsher language it had used in the declaratory order. In the settlement agreement, Arkansas DHS agreed "that an arbitration agreement used as a condition of admission to a nursing home is permissible if it complies with the CMS January 9, 2003 memorandum . . ." (Doc. 22-2 at para. 13). The settlement agreement further states, "Consistent with the January 9, 2003 CMS position memorandum . . . it is not the Department's position that the use of arbitration agreements violates a resident's right to a jury trial." (*Id.* at para. 15).

-10-

The Court notes that Arkansas DHS, in its declaratory order seemed to be more concerned with the unequal terms of the arbitration agreement than with the fact that the agreement itself may be void as constituting separate consideration. Unconscionability of the Agreement is not an argument that O'Brien has pursued in this case. As the issue has not been adequately briefed by the parties, the Court does not purport to make any ruling as to whether the Agreement in this case may or may not be void on grounds of unconscionability. In the same settlement agreement, Arkansas DHS and Northport stipulated that "Northport requires that residents or their representative sign an Admission Agreement before admission to its nursing homes . . . Agreement to arbitration is a condition of admission to Northport's nursing homes." (*Id*. at para 8). The Court need make no further inquiry, then, as to the factual issue of whether agreement to arbitrate is actually a required precondition to admission at a Northport facility.

Both CMS and Arkansas DHS (in relying on the CMS memo) skillfully skirt the issue of whether a requirement of signing an arbitration agreement as a precondition to admission may be violative of Medicaid regulations. In fact, it seems to the Court that the legality - or illegality - of requiring an arbitration agreement as a condition to admission is far from clearly established. The case law on this subject is sparse. Most courts that have considered the issue, however, have found that arbitration agreements are not to be considered additional consideration. *See, e.g., Owens v. Coosa Valley Health Care, Inc.,*

890 So.2d 983, 989 (Ala. 2005)("requiring a nursing-home admittee to sign an arbitration agreement is not charging an additional fee or other consideration as a requirement to admittance"); *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So.2d 278, 288 (Fla. Dist. Ct. App. 2003) ("We have found no authority from any jurisdiction which holds that an arbitration provision constitutes 'consideration' . . . nor do we believe that the federal regulation was intended to apply to such a situation."); *Broughsville v. OHECC, LLC*, 2005 Ohio 6733 at *7-8 (Ct. App. Ohio 2005) ("inclusion of an arbitration provision in a nursing home admissions agreement does not constitute additional consideration"). In some cases in which a court has faced this issue, the fact that an arbitration agreement was not mandatory significantly influenced the court's decision. *See e.g.*, *Rainbow Health Care Ctr., Inc. v. Crutcher*, 2008 U.S. DIST LEXIS 6705 at *20-*21 (N.D. Okla. 2008)(basing its finding that 42 U.S.C. § 1396r(c)(5)(A)(iii), in part, on the fact that residents had a unilateral right to revoke the arbitration provision for up to ten days after signing the agreement). In this case, Northport does not dispute that signing an arbitration agreement is mandatory for persons seeking admission to its facilities.

Northport claims that its arbitration agreement is valid, whether mandatory or not, arguing in part that an arbitration agreement is simply a forum selection clause. There is some support for this proposition. *See e.g.*, *Owens*, 890 So. 2d at 989 (rejecting the idea of an arbitration agreement as separate consideration and finding that "an arbitration agreement sets a forum for future

-12-

disputes"); *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411 (Ind. Ct. App. 2006) (finding that "requiring a nursing-home admittee to sign an arbitration agreement is not akin to charging an additional fee or other consideration" but "[r]ather, an arbitration agreement merely establishes a forum for future disputes"). The Alabama Supreme Court reasoned in *Owens* that both parties are bound by an arbitration agreement and "*both* receive whatever benefits and detriments accompany the arbitral forum." 890 So. 2d at 989. The Court agrees, in part, with this reasoning. Arbitration agreements, however, are more than simple forum-selection clauses. They are process-selection clauses. The choice to forego the constitutional right to a trial by jury and instead submit disputes to binding arbitration is more involved than agreeing that disputes will be governed by the law of a certain geographical location. However, the Agreement does represent a mutual agreement by the parties to resolve any disputes that may arise, subject to certain exceptions, through arbitration. Both parties are mutually bound. To that extent, while it may be argued that one side may benefit more than another when arbitration agreements are forged between a corporation and a consumer, the fact remains that neither side is deprived of an opportunity to adequately air their grievances before an impartial decision-maker. A contrary finding would serve only to perpetuate the historical prejudice against arbitration agreements that Congress sought to eradicate through enactment of the FAA over eighty years ago. *See Rainbow Health*, 2008 U.S. DIST LEXIS 6705 at *20-*21 (citing *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford*, 489

U.S. 468, 474 (1989)).

Furthermore, the Court agrees with the rationale expressed by some courts when ruling on this issue, based on straightforward application of statutory construction. *See e.g., Sanford v. Castleton Health Care Ctr., LLC,* 813 N.E.2d 411, 419 (Ct. App. Ind. 2004). *Ejusdem generis*, as a canon of construction, dictates that when a list of two or more specific descriptors is followed by a more general descriptor, the otherwise wide meaning of the general descriptor must be restricted to the same class, if any, of the specific words that precede it. *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S.371, 384-85 (2003). Additionally, according to the interpretive maxim of *noscitur a sociis*, "a word is known by the company it keeps." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961). The maxim "is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to Acts of Congress." *Id.* The regulations at issue here, cited by O'Brien, provide that a nursing facility must "not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan under this title, any gift, money, donation, or other consideration as a precondition" of admission. 42 U.S.C. § 1396r(c)(5)(A)(iii); *see also 42* C.F.R. § 483.12(d)(3) (using substantially similar language). At issue, here, is the meaning of "other consideration." In effect, O'Brien argues that Northport solicited her signature on the Agreement, which signature and agreement was tantamount to a gift, money, or donation, such that

when Northport accepted the Agreement, it was in violation of Medicaid regulations. The Court disagrees for several reasons.

First, employing the principle of *ejusdem generis*, the general descriptor "other consideration," when employed directly following a specific enumeration of the terms "gift," "money," and "donation" does not encompass an arbitration agreement. Rather "other consideration" must be restricted to the same class of the more specific preceding terms. Requiring a nursing home admittee to sign an arbitration agreement is not akin to charging or soliciting gifts or money. While the right to a jury trial no doubt has some undefinable value, it is not in the same class as a gift, money, or donation which are all terms denoting something tangible of easily determinable value. Secondly, employing the principle of *noscitur a sociis* and viewing the words of the statute in context, the prohibition against "other consideration," looks to be an attempt to prevent nursing facilities from charging potential admittees or existing residents over and above any funds already provided by Medicaid.  The language of the regulations prohibiting "*charg[ing]*, *solicit[ing]*, *accept[ing]* or *receiv[ing]* in addition to any *amount* otherwise required to be *paid*" clearly indicates an intent to prohibit a nursing facility from accepting tangible payments, gifts, moneys, or donations of discernible amount. Lastly, consideration, in the contractual sense, is not limited to an exchange of money. O'Brien did not sign the Agreement or give up any rights gratuitously, in the same manner that someone might be forced to make a payment, without receiving consideration from Northport in return. Both parties mutually agreed to submit

-15-

disputes to arbitration in lieu of resorting to litigation. The Court finds that such a mutually binding agreement, especially in view of the strong federal policy in favor of arbitrating disputes, is not contemplated as "other consideration" by the Medicaid regulations.

Based on the foregoing, the Court finds that Defendant's opposition to the pending motion fails to provide sufficient grounds to deny the motion, raising no genuine dispute that arbitration should not be compelled. Northport has met its burden of proving that a valid arbitration agreement existed and that the disputes between the parties fall under the broad scope of that agreement such that they should be made subject to arbitration. O'Brien then failed to meet her burden in proving the applicability of any of the affirmative defenses set forth in her Answer (Doc. 13) and Response (Doc. 24) to Northport's Motion for Summary Judgment. Specifically, the Court finds that on the very narrow issue of illegality advanced by O'Brien, the Agreement is not void as violative of federal regulations prohibiting solicitation of "other consideration." The Court, therefore, finds that arbitration of O'Brien's claims should be compelled.

Finally, as to Northport's request that the state court proceedings be enjoined, the Court notes that a federal court enjoining a state court proceeding raises serious federalism concerns. The Anti-Injunction Act provides that a federal court may grant a stay of a state court proceeding only "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.

-16-

§ 2283. "The Supreme Court has interpreted the Act as 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions' included in the language of the statute." *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1014 (8th Cir. 2002)(quoting *Atlantic C.L.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286-87 (1970)). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic C.L.R. Co.,* 398 U.S. at 297. The Court finds that none of the exceptions apply in this case and, therefore, declines to enjoin the state court proceedings. The Court fully expects, however, that O'Brien will refrain from pursing those claims which are subject to the complaint to compel arbitration.

## IV. Conclusion

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 21) is **GRANTED insofar as it seeks to compel arbitration,** and the Court hereby directs the parties to proceed to arbitration of their disputes in accordance with the arbitration provisions of the signed Admission Agreement and accompanying Consent to Arbitration and Waiver of Jury Trial. This matter is **STAYED pending the parties' completion of arbitration. IT IS FURTHER ORDERED** that the parties shall file a stipulation of dismissal or a status report in this matter on or before July 31, 2011.

-17-

Plaintiffs' Motion is **denied** insofar as it seeks to enjoin proceedings between the parties in the Circuit Court of Logan County, Arkansas.

IT IS SO ORDERED this 10th day of May, 2011.


*/s/ Paul K. Holmes, III*
**Paul K. Holmes, III**
**United States District Judge**